## McLEOD v. NAGLE, Commissioner of Immigration.

### No. 6311.

Circuit Court of Appeals, Ninth Circuit.
March 30, 1931.

190

John F. O'Sullivan, of Fresno, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Francis J. Perry, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellant is a British alien who entered the United States from Canada during April, 1924. Prior to such entry he was convicted in Vancouver, British Columbia, on January 25, 1924, of breaking and entering, and of stealing a quantity of jewelry of the value of over $10. On April 15, 1930, deportation proceedings were instituted against him under section 19 of the Immigration Act of February 5, 1917 (8 USCA. § 155), and thereafter appellant was ordered deported on the ground that he had "been convicted of or admits the commission of a felony or other crime or misdemeanor involving moral turpitude, to-wit: breaking and entering, prior to entry into the United States." The facts are not in dispute, but appellant contends that the order of deportation is void under said act because proceedings were not instituted within five years after the alien's entry into the United States.

The cases of Lauria v. United States (C. C. A.) 271 F. 261, certiorari denied, 257 U. S. 635, 42 S. Ct. 48, 66 L. Ed. 408, and Weedin v. Tayokichi Yamada (C. C. A.) 4 F.(2d) 455, 456, stand four square with this case, and the Circuit Court of Appeals for the Second Circuit and this court have held therein that an alien who "has been convicted of or admits the commission of a felony or other crime or misdemeanor involving moral turpitude" is subject to deportation at any time. In the construction of statutes it is the duty of the court to ascertain the clear intention of the Legislature. In that regard, we find nothing in the instant case to differentiate it from the cases cited and to invoke a different interpretation of the statute in question.

Appellant contends, however, that, according to the strict rules of grammatical construction, a different interpretation of the intent of the Legislature must necessarily follow. He holds that said section 19 is divided into two main parts, those cases coming under the heading "within five years after entry," and those cases coming under the heading "within three years after entry"; that there are certain exceptions especially noted; and that, in the absence of any particular specification of time, the beginning phrase "at any time within five years after entry" modifies every succeeding clause until the clearly antithetical phrase "at any time within three years" is reached. Appellant admitted in his oral argument that, if the two cases cited above were upheld, there would be nothing in the appeal, and we find that the above cases follow very carefully the commonly accepted grammatical rules.

The Oxford Dictionary, after defining a semicolon, says that it is used for "marking off a series of sentences or clauses of coordinate value." Volume VIII, part II, p. 440. According to this statement of usage, every clause separated by a semicolon in the section under consideration is co-ordinate with each of the others, and therefore must each be read separately with the verb "shall * * * be taken into custody and deported." Under this construction the beginning phrase, "at any time within five years," cannot be carried over to each of the succeeding clauses; each of the latter must be modified only by the time limit specifically stated therein, and, if no time limit is expressed, then the section must be interpreted to mean "at any time after the entry of the alien into the United States."

Again, Crowell's Dictionary of English Grammar (Thomas Crowell, 1928) says, at

page 527: "The semicolon is used to separate independent clauses that are not joined by a conjunction as 'He cried; I laughed'; to separate co-ordinate clauses of unusual length and those that contain commas, whether or not the clauses are joined by conjunctions; to separate conditional clauses joined by conjunctive adverbs." The clauses of the instant section are each as independent as the clauses of the example given, because of the fact that, although ·the predicate is expressed only once for the sake of brevity, it is elliptical to each of the sections set off by semicolons.

Again, Ward's "Sentence and Theme" (Scott, Foresman & Co., 1923), at page 331, says the semicolon "shows that two sentences, each of which should stand alone, have been combined into one sentence"; and continues, "A semicolon is used to show that what follows is *grammatically independent*, though closely related in thought." (Italics our own.)

From the point of view of strict grammatical construction, therefore, it is evident that, since the semicolon has been used to set off the various subdivisions of the section, the initial phrase, "within five years after entry," cannot be presumed to carry over into the subsequent clauses that are separated from the initial clause by a semicolon. The initial phrase, "within five years after entry," is set off by a comma, a weaker punctuation mark than the semicolon. The function of that comma is to set off the phrase from the rest of the clause in which it appears, and not from the rest of the entire section. The semicolon effectually isolates the opening clause and its dependent phrase from the other and subsequent clauses. These clauses have only one grammatical construction in common; they are joint subjects of the common predicate with which the entire section is brought to a close.

There is only one remaining basis for the contention of appellant on grammatical grounds that the opening phrase, "within five years after entry," is applicable to the classification under which he falls. That basis would be the closely related field of rhetoric, but it is neither the province nor the desire of this court to set itself up as an academy of letters to rule on questions of style. It may be admitted that the language of many statutes might be improved upon, but, so long as that language follows certain well-established rules of grammar, it is not our duty to judge it by its nicety of phraseology.

The argument that aliens who admit having committed a crime before entry into the United States are under the class of those "excluded by law" and, therefore must be considered subject to deportation only within five years after entry into the United States does not appeal to us. "It must be conceded that the appellee is a member of one of the classes excluded by law. * * * But it must likewise be conceded that he also belongs to the special class for which no time limit is fixed, and under a familiar rule of statutory construction the special provision will control over the general one." Weedin v. Tayokichi Yamada, supra. Here Congress has expressly excepted aliens convicted of crime prior to their entry into the United States from the general classification of those who are excluded by law. The language is clear, and so to construe it gives each clause of section 19 its due importance; to construe it so that a five-year limitation would be attached to the clause in question would render void a definite statement of the will of Congress.

Finally, the third proviso near the end of the section seems conclusive that there is no time limit save as specially noted. This proviso reads as follows: "The provisions of this section, with the exceptions hereinbefore noted, shall be applicable to the classes of aliens therein mentioned irrespective of the time of their entry into the United States." 8 USCA § 155.

This proviso seems clearly to indicate, in words as unambiguous as Congress could have used, that, in each subdivision of Section 19 in which no time limit is specifically provided, no time limit is intended.

The judgment of the lower court is affirmed.