## UNITED STATES ex rel. PAPPAGEANAKIS v. SHAUGHNESSY.

United States District Court
S. D. New York.
July 14, 1953.

William L. Schneider, New York City, for relator.

J. Edward Lumbard, Jr., U. S. Atty., Southern District of New York, New York City, for respondent.

DIMOCK, District Judge.

This is a habeas corpus proceeding in which relator, an alien, claims that he is being illegally held for deportation by immigration officials. The warrant of deportation is based on the ground that relator was convicted of a crime involving moral turpitude prior to his last entry into the United States and it refers to the Act of Feb. 5, 1917, § 19, formerly 8 U.S.C. § 155(a).

Relator first entered the United States on December 14, 1920, coming from his native country, Greece. On April 19, 1933 he was convicted, upon his plea of guilty in a federal court in New York, of possession and passing of counterfeit money and was sentenced to serve ten years imprisonment and to pay certain fines. He remained in this country from the time of his entry until about June, 1940 when he went to Mexico for five or six weeks and returned to this country in or about July, 1940. Since that time he has remained in the United States. On December 23, 1952 he was arrested by the immigration officials and proceedings leading to the issuance of the warrant of deportation were had. Because of my views on the merits I will pass the question raised by respondent whether relator has failed to exhaust his administrative remedies and whether he is therefore barred from obtaining a judicial review of the order of deportation.

With respect to the grounds of deportation, relator apparently makes three contentions: first, that proceedings for deportation under the statute referred to in the warrant must be commenced within five years after entry, second, that he cannot be deported, under the provisions of the statute referred to, since the crime was not committed within five years after his original entry into the United States and, third, that he cannot be deported since the crime occurred more than five years before his last entry into the United States. The pertinent portions of Section 19 of the Act of Feb. 5, 1917, formerly 8 U.S.C. § 155(a), are set forth in the margin.[1]

---

1. "[1] At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; [2] any alien who shall have entered or who shall be found in the United States in violation of this chapter, or in violation of any other law of the United States; [3] any alien who at any time after entry shall be found advocating or teaching the unlawful destruction of property, or advocating or teaching anarchy, or the overthrow by force or violence of the Government of the United States or of all forms of law or the assassination of public officials; [4] any alien who within five years af-

ter entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing; [5] except as hereinafter provided, any alien who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; [6] any alien who shall be found an inmate of or connected

In support of the first contention relator relies on a clause in the statute which I have numbered 5. This clause provides for the deportation of aliens where they have been convicted in this country of certain crimes committed within five years *after* entry. The relator's deportation, however, is not based on that clause. It is based on the clause that I have numbered 11. The latter clause provides for the deportation of aliens who have committed certain crimes *prior* to entry. There is no contention that relator's re-entry in 1940 was not an entry within the meaning of the statute; indeed that has been settled, United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298. Nevertheless relator contends that there can be no deportation under this clause unless the proceedings are commenced within five years after entry, relying on the words at the beginning of the section. One of cases cited by relator, Ex parte Tayohichi Yamada, D.C.W.D.Wash., 300 F. 248, would tend to support that view but it was reversed, sub nom. Weedin v. Tayokichi Yamada, 9 Cir., 4 F.2d 455. There the court of appeals held that a deportation warrant based on the commission of a crime prior to a re-entry was not rendered void because issued more than five years after the date of that entry. In that case, the deportation proceedings were commenced almost ten years after the alien's last entry, seventeen years after the commission of the crime and almost twenty-two years after the alien's original entry. Since the decision of that case, it has been held that there is no time limitation upon deportation under the eleventh clause, i. e. where the crime was committed before entry, Pillisz v. Smith, 7 Cir., 46 F.2d 769; United States ex rel. Azzarello v. Kessler, 5 Cir., 88 F.2d 301.

In considering relator's second contention that he cannot be deported because the crime was not committed within five years after his entry, I have assumed that he is referring to his original entry since to say that the crime would have to have been committed within five years after the re-entry would eliminate crimes committed before re-entry, a construction so absurd in the light of the words of the eleventh clause that I cannot attribute it to relator. Relator's contention that an alien even though he has made a re-entry can be deported only if the crime was committed within five years of the original entry is based upon the argument that if he had stayed in the country he could not have been deported on account of a single crime

with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings. of any prostitute; [7] any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists any prostitute or protects or promises to protect from any arrest any prostitute; [8] any alien who shall import or attempt to import any person for the purpose of prostitution or for any other immoral purpose; [9] any alien who, after being excluded and deported or arrested and deported as a prostitute, or as a procurer, or as having been connected with the business of prostitution or importation for prostitution or other immoral purposes in any of the ways hereinbefore specified, shall return to and enter the United States; [10] any alien convicted and imprisoned for a violation of any of the provisions of section 138 of this title; [11] any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; [12] at any time within three years after entry, any alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner of Immigration and Naturalization, or at any time not designated by immigration officials, or who enters without inspection, shall, upon the warrant of the Attorney General, be taken into custody and deported. * * * The provisions of this section, with the exceptions hereinbefore noted, shall be applicable to the classes of aliens therein mentioned irrespective of the time of their entry into the United States; * * *. [Numbers inserted are mine.]"

committed more than five years after his admission and that his position should be no worse on account of a departure and re-entry. Two cases that he cites support this view, Nagle v. Lim Foon, 9 Cir., 48 F.2d 51, and Wilson v. Carr, 9 Cir., 41 F.2d 704. I think that these cases have been, in effect, overruled by the subsequent decision of the Supreme Court in United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298, supra. There it was held that a crime committed within the United States nineteen years after the original entry was a sufficient basis for deportation after the re-entry of an alien who, after twenty-two years of residence here, had made a brief visit abroad. The Supreme Court expressly dealt with the question before me when it said, 289 U.S. at page 426, 53 S.Ct. at page 667, 77 L.Ed. 1298:

> "It may be true that, if Volpe had remained within the United States, he could not have been expelled because of his conviction of crime in 1925, more than five years after his original entry; but it does not follow that, after he voluntarily departed he had the right of re-entry. In sufficiently plain language Congress has declared to the contrary."

This decision leaves no doubt in my mind that an alien may be deported under the eleventh clause even though the crime has been committed more than five years after the original entry. Indeed the result of a more recent decision in the same circuit that decided the Nagle and Wilson cases, Schoeps v. Carmichael, 9 Cir., 177 F.2d 391, certiorari denied 339 U.S. 914, 70 S. Ct. 566, 94 L.Ed. 1340, was that an alien was deported because of a crime committed about twelve years after original entry and about sixteen years prior to a re-entry after a one-day visit to Mexico which was the basis of the deportation proceedings. It is true that in the Schoeps case, unlike the case at bar, the proceedings were commenced within five years after the re-entry but, as decided above in answer to relator's first objection, there is no time limit on the bringing of proceedings based on a crime committed before re-entry.

In support of the third contention, that deportation can be based only on a crime committed no more than five years before the last entry into the United States, relator cites a dictum in United States ex rel. Schlimmgen v. Jordan, 7 Cir., 164 F.2d 633, 637. There the court decided that the deportation hearing was fair and that the alien's return to the United States after foreign voyages as a seaman constituted an entry within the meaning of the statute. The court then went on to deal with the alien's contention that "after he had originally come to America he could not legally be deported, under the statute which requires his deportation if he admits guilt of a crime involving moral turpitude, inasmuch as the crime was committed in this country *within five years prior* to his re-entry" (italics mine), 164 F.2d 633, 636, and said in the next sentence, "That question was decisively answered contrary to appellee's contention by this court in United States ex rel. Volpe v. Smith, 7 Cir., 62 F.2d 808, affirmed * * * 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298". Further on, the court stated that its conclusion was that the alien was rightfully found subject to deportation because within five years prior to his last entry he had committed a crime involving moral turpitude. I am satisfied that, in using this language, the court did not intend to decide or even assert that the crime, in order to serve as a basis for a deportation order, must be one committed within five years prior to re-entry. There is also a dictum in United States ex rel. Medich v. Burmaster, 8 Cir., 24 F.2d 57, which supports relator's contention. There was, however, even less cause for expressing a view on the point than in the Schlimmgen case. In any event, I find no warrant in the statute for a determination in relator's favor on the contention and, in the absence of a holding or considered language to that effect, I hold that it is not a condition to the deportation of an alien under the eleventh clause on account of the commission of a crime committed prior to entry that the crime must have been committed within five years prior to re-entry. The result arrived at in Schoeps v. Carmichael, 9 Cir., 177 F.2d 391, certiorari

denied 339 U.S. 914, 70 S.Ct. 566, 94 L.Ed. 1340, supra, supports my view.

Relator also makes the contention that he did not receive a full and fair deportation hearing because his request for a reopening of his case was denied with the result that he was prevented from introducing additional evidence. The evidence he proposed to introduce does not bear on the ground of his deportation. I regard an application to reopen a case as one addressed to the discretion of the administrative officials and I do not think that relator has shown an abuse of that discretion in this case. In any event, it does not appear that, as a result of the denial of relator's request, the deportation hearing was unfair or otherwise improper.

Writ dismissed.